## TWEEDIE v. CLARK.

(Supreme Court, Appellate Division, Third Department. June 27, 1906.)

**1. Chattel Mortgages—Distinction between—Conditional Sales and Mortgages.**

An instrument in the form of a note, but containing a recital that the note was given for a horse, the title to which was to remain in the payee until the note was paid, and containing further provisions that the maker thereby sold and transferred to the payee all his right and title to the horse, and authorized the payee to take possession of the same on nonpayment of the debt, sell it, and apply the proceeds to the satisfaction of the note, etc., was a contract of conditional sale, and not a mortgage.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Chattel Mortgages, §§ 23–41.]

**2. Liens—Redemption—Sale of Property—Tender of Amount of Debt—Right to Possession.**

Under Lien Law, Laws 1897, p. 535, c. 418, § 83, providing that at any time before the property is sold to satisfy the lien the owner may redeem by paying the amount due, and upon making such payment the owner is entitled to possession of the property, the sale of the property subject to a lien transfers to the buyer the right to redeem, and a tender by him to the bank holding the note evidencing the debt of the amount due entitles him to the possession of the property.

Appeal from Special Term, Delaware County.

Action by Alexander Tweedie against Emmett Clark. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

This action is in replevin to recover a horse. One David H. Hammond and Maggie Hammond, his wife, occupied the plaintiff's farm as tenants. They had in their possession certain personal property of the plaintiff's including a team of horses. These horses they were authorized to exchange for other horses. On June 6, 1904, the defendant, one of the firm of Hall & Clark, sold and delivered to the said David H. Hammond one horse, and in payment thereof took one of the horses belonging to the plaintiff, and also took a paper writing, which reads as follows:

"$100.            Walton, Delaware Co., N. Y.   June 6, 1904.

"Three months after date I promise to pay to the order of Hall & Clark one hundred dollars, at the First National Bank of Walton, N. Y., value received, with interest. This note is given for the purchase price of one bay white face horse, and it is expressly agreed by and between the maker of this note and the payee that the title to said property shall be and remain in said payee or order until this note and interest, and costs of protest fees and postage, if said note is protested, is fully paid. Now for securing the payment of said debt represented by this note, I do hereby sell, assign, and transfer to the said payees all my right, title, and interest in and to the property mentioned therein, and described in the following schedule, viz.: one bay horse, white face, to the payees, and the said payees or order, or the legal representatives of the payees, or any person or corporation to whom this note may be sold or assigned, shall upon nonpayment of said debt or interest have full power and authority to enter upon the premises of the maker of this note (or makers), or any other place or places where the goods and chattels of aforesaid may be, to take possession of said property, and to sell same either at public or private sale, and the avails, after deducting all expenses of the

sale and keeping of said property, to apply in payment of the above debt; and, in case the said payees or their assigns shall at any time deem themselves or said property, debt, or security unsafe, it shall be lawful for them to take possession of said property, and sell the same at public or private sale, previous to the time mentioned for the payment of said debt, applying the proceeds, as aforesaid, after deducting all expenses for the sale and keeping of the said property; and the said payees, their heirs and assigns, may purchase at any such sale in the same manner and to the same effect as a person not interested therein. If from any cause the said property shall fail to satisfy said debt, interest, costs, and charges, the said maker covenants and agrees, and shall be liable and do hereby agree, to pay the deficiency. And it is further provided and expressly understood by and between the said parties, as aforesaid, that the payees may keep and retain whatever may have been paid upon the said note if default be made in any payment or interest for the use of the aforesaid property.

"[Witnessed by]          [Signed]                              D. H. Hammon"

On the said 6th day of June the defendant indorsed said instrument with the name of Hall & Clark, and transferred the same thus indorsed to the First National Bank of Walton. The same was not paid upon September 6th, the due date thereof, but upon September 8, 1904, $25 was paid thereon and indorsed thereon by the bank. Upon the 10th day of November, 1904, this horse, together with other personal property and the farm, was surrendered and transferred by David H. Hammond and his wife to the plaintiff. Upon the 12th day of November the plaintiff notified the defendant of this transfer, and notified him that he wished to redeem what was against the horse, and asked him if he should leave the money at the bank. In the meantime the horse had been loaned to David H. Hammond by plaintiff to transfer his goods, and had been by David Hammond surrendered up to defendant. This surrender was after defendant had received plaintiff's notification. Upon the said 12th day of November the plaintiff and defendant met, and the defendant demanded the sum of $85 as a condition of releasing the horse to the plaintiff. Thereafter, and upon that day and after banking hours, the defendant saw the president of the said bank, and told him to charge that note up to his account, which the president of the bank promised to do. Upon Monday morning, November 14th, at about the time of the opening of the bank, the plaintiff went to the bank and saw the cashier, and asked what was due upon the note. The amount was figured up, and the plaintiff drew his check for the amount from funds which were in the bank at the time, and delivered the same to the cashier of the bank. Upon the next day the plaintiff came into the bank and withdrew his check, and deposited the full amount in cash for the defendant. Of this the defendant was notified, and he refused to receive the same. After the giving of the check by the plaintiff upon the 14th day of November, the bank did in fact charge the note to the account of the defendant. Thereafter the plaintiff demanded the possession of the horse from the defendant, which demand was refused, and this action was brought to recover its possession. Upon the trial of the action the case was submitted to the court, which decided that the plaintiff was not entitled to the possession of the horse, and dismissed his complaint. From the judgment entered upon this decision, this appeal has been taken.

Argued before SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

A. G. Patterson, for appellant.

Alexander Neish, for respondent.

SMITH, J.   The first question to be determined is as to the rights of the parties under the paper executed between David H. Hammond and Hall & Clark upon June 6, 1904. That paper was executed contemporaneously with the purchase of the horse, and must be deemed to be the entire contract between the parties. The purchase price of an

article sold may be secured in either of two ways—first, by a conditional sale, through which the title is reserved in the vendor until the purchase price is paid; secondly, by a chattel mortgage given back by the purchaser. While the object to be accomplished by either form of security is substantially the same, the rights of the parties under the two forms of security are materially different. Hence the importance of determining, first, whether this paper constituted a conditional sale, which would thus become subject to the statutes governing the rights of parties under conditional sales, or whether such paper constituted a transfer of title and a chattel mortgage back, and should be construed in the light of well-settled decisions governing the rights of mortgagors and mortgagees under such an instrument. It seems clear to me that this paper is an instrument of conditional sale. A chattel mortgage cannot be given unless the mortgagor has title, and under this instrument no title ever passed from Hall & Clark to David H. Hammond. While there are some provisions in the contract which are ordinarily found in chattel mortgages, none of them are inconsistent with a contract of conditional sale; and, were it otherwise, the fact that no title passed at the time of the sale to David H. Hammond would preclude the possibility of construing the instrument as a chattel mortgage. The parties chose to secure the purchase price by a contract of conditional sale, and thereby subjected themselves to the statutory restrictions and regulations of the rights of parties under such a sale.

If, then, this be a conditional sale, David H. Hammond at any time before the sale of the horse by the defendant had the right to redeem that horse upon the payment of the amount due upon the note. Lien Law, Laws 1897, c. 418, pp. 535, 540, §§ 83, 112. While the lease of the farm and of the property was in form by plaintiff to Maggie Hammond, the fact is undisputed that David Hammond was the active party, and was leasing the property in the name of his wife, and that upon November 10th both David Hammond and his wife transferred to the plaintiff their interest in this horse, which would transfer all the rights of either of them under this contract. Defendant refused to surrender to the plaintiff this horse except upon payment in excess of that which was due upon the note. The plaintiff's offer to pay the amount due upon the note at the bank where the note was held, and his deposit of the money therein to pay the same, with full notice to defendant, is a sufficient tender, so as to entitle him to the possession of the horse, under section 83 of the lien law before cited. The judgment should therefore be reversed upon the law and the facts, and a new trial granted, with costs to appellant to abide the event. All concur.